*102 N. J. Eq.*                    Gerlach *v.* Ball.

MARY L. GERLACH et al., complainants-respondents,

*v.*

RENA H. BALL and G. D. W. SLACK, defendants-appellants.

[Decided January 5th, 1928.]

On appeal from an order of the court of chancery advised by Vice-Chancellor Buchanan, who delivered the following opinion:

"The main cause is a partition suit, wherein was made a decree for sale of the premises by a special master in the usual manner. The sale was duly held and Garrett D. W. Slack, one of the co-tenants and a defendant in the cause, bid for the premises 212 South Broad street, Trenton, New Jersey, the sum of $28,500, and for the premises 135-137 Jackson street, the sum of $8,700, and for the premises at Mount Holly, New Jersey, the sum of $5,100.

"All three parcels were struck off to Slack as the highest bidder, and he signed as purchaser and paid down ten per cent. of the aggregate purchase price. Of this down payment $3,720 was by Slack's uncertified check. The time fixed for completion of the purchase and delivery of deed was February 23d, 1927. About February 15th, Slack asked that this date be postponed until March 2d, to give him time to get the entire cash balance necessary to complete the purchase, and the special master agreed.

"The sale was reported and duly confirmed by decree dated March 1st, 1927. Proper deeds of conveyance were executed by the master and tendered to Slack on March 2d, but Slack refused to take the deeds or pay the balance due, giving as his reason that he had subsequent to the sale, ascertained that the building on the premises 212 South Broad street had been condemned as unsafe.

"Complainants thereupon filed verified petition in the cause alleging the foregoing facts, and asking decree requiring Slack specifically to perform his contracts; and an order to show cause was made thereon by the chancellor.

"On the return day the respondent filed an answer and answering affidavit, admitting substantially all the allegations of the petition, and saying that he was and always had been ready and willing to complete the purchase of the Mount Holly property. In defense he alleged that he had learned from the office of the Trenton building inspector that the building on the land designated as 212 South Broad street, Trenton, New Jersey, had been, previous to said sale, condemned as unsafe, and that such building and buildings could not be used for any purpose whatsoever; that he had not known this prior to the sale; that by reason thereof he, Slack, could not resell the premises for more than $22,000, and could not borrow on the combined Broad and Jackson street properties more than $19,000, and was therefore unable and unwilling to complete the purchase of those premises.

"He sets this up as an encumbrance, and as undue hardships constituting defense to specific performance.

"No objection was made to form or procedure (if indeed any might validly have been made); the matter was argued and submitted by both sides, on the pleadings and affidavits. The sole argument was as to whether, on the proofs before the court, the respondent had made out a case sufficient to defeat decree of specific performance.

"The determination of the court is against the respondent.

"In the first place there is no competent evidence that there was any condemnation of the building. The allegation of the answer (unverified generally) is only that respondent "learned from the office of the building inspector" that the building had been condemned, and could not be used for any purpose whatever. His affidavit says only (in one place) that he was told by a real estate agent named Kinney that he, Kinney, had been told that the building had been condemned, and (in another plan) that respondent "was informed at the office of the building inspector" that the building had been

condemned as unsafe, and was informed by the deputy building inspector that "a notice" had been mailed to him previously by the department.

"All this is obviously mere hearsay, and incompetent. There is no other proof.

"In the second place it does not appear that respondent was not fully aware of the condition of the building; rather does the contrary appear. Respondent in his affidavit admits that he owned a two-fifths share of the property; that for five years perviously he had attended to the renting, collecting of rent, payment of taxes and making repairs. He must therefore have known—and he in nowise asserts the contrary—that the building was in such poor condition as to render it likely to be condemned. If we assume that it was condemned as unsafe, we must also assume that it was properly so condemned, there is no intimation to the contrary, and the action must be presumed to have been properly taken.

"In the third place there is neither proof nor even allegation that respondent would not have bid the price he did, if he had known of the alleged condemnation.

"In the fourth place there is no proof that the property is not fully worth all that he bid. The answer says only that he was not able to effect a resale for more than $22,000; the affidavit shows that his effort in that behalf was only through a single real estate agent, and during a period of less than a week. This (and there is nothing else) is in nowise proof that the property, even though condemned as to building, is not fully worth the $28,500, contract price.

"Admittedly no other party knew anything of the alleged condemnation.

"One thing more: Respondent says in his affidavit that 'immediately following' respondent's request to the special master for a week's extension, he learned from the agent, Kinney, of the condemnation, and its effect, and that he could not resell for more than $22,000. The petition alleges, and the answer admits, that this request was on or about February 15th. (The sale was on February 9th or 11th, and this shows that the effort to resell was only during that week.)

The decree of confirmation was not made till March 1st. During this period of nearly two weeks he had all this notice and information, but took no step to be relieved of his bid, or prevent confirmation.

"Complainant-petitioners are entitled to decree for specific performance, with costs."

*Messrs. Palmer & Powell,* for the respondents.

*Mr. Herbert S. Killie,* for the appellants.

PER CURIAM.

The order appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Buchanan.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, DEAR, JJ. 14.

*For reversal*—None.